IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Civil Action No. 7:13cr00008 |
| v. | ) |
| | ) |
| CHARLES JAMES HARDING | ) By: Michael F. Urbanski |
| | ) United States District Judge |
| | ) |

## MEMORANDUM OPINION

Defendant Charles James Harding is charged in a one-count indictment with failure to register under the Sex Offender Registration and Notification Act ("SORNA") in violation of 18 U.S.C. § 2250. At a status conference held on March 29, 2013, Harding orally moved to dismiss the indictment on various jurisdictional and constitutional grounds. Because Harding's arguments find no support in law and have been soundly rejected by other courts to have considered them, Harding's motion to dismiss (Dkt. # 21) is **DENIED**.

I.

The indictment handed down on January 24, 2013 charges that from on or about October 14, 2012 to on or about November 30, 2012 in the Western District of Virginia and elsewhere, Harding, being a person required to register under SORNA and having traveled in interstate and foreign commerce, did knowingly fail to update his registration as required by SORNA, in violation of 18 U.S.C. § 2250. Following his arrest, Harding appeared before the court on February 5, 2013 for an initial appearance, identity hearing[1] and detention hearing, at which he stated that he did not want an attorney paid by the federal government to represent him. The magistrate judge appointed assistant federal public defender Randy Cargill as an advisor to Harding for purposes of the hearing and gave Harding an opportunity to retain other counsel.

---

[1] When asked whether he was Charles James Harding, the person named in the indictment, Harding questioned the court regarding the definition of a "name," which prompted the identity hearing.

The magistrate judge determined there was probable cause to find Harding was the person named in the indictment and remanded him to custody pending trial, finding him both a risk of flight and a danger to the community. On February 13, 2013, after Harding indicated that he was not able to retain other counsel, Cargill was appointed to represent Harding. Harding entered a plea of not guilty and his trial was scheduled for April 15, 2013.

The parties appeared before the court for a status conference on March 29, 2013. At that time, Cargill explained that Harding wanted Cargill to raise certain legal arguments at trial that Cargill believed he could not raise in good faith, given his ethical obligations to the court. The court invited Harding to address the court directly and raise any issues of law he would like the court to consider. Harding did so, raising the various jurisdictional and constitutional arguments addressed herein, which the court indicated would be considered and ruled upon in written form. At the conclusion of the March 29th status conference, Harding clearly and unequivocally stated that he wanted Cargill to continue to represent him.

Harding subsequently entered a plea of guilty on April 8, 2013, conditioned upon his right to appeal the instant ruling.

## II.

Harding argues that the federal government and the court lack jurisdiction over him because (1) the Organic Act of 1871 created a United States corporation which does not have jurisdiction over him as a citizen; (2) the CHARLES JAMES HARDING named in the indictment in all capital letters is not a natural, living person; (3) there is no corpus delicti; and (4) this is a court of admiralty. Harding's arguments are akin to those advanced by proponents of the sovereign citizen movement who "believe they are not subject to federal or state statutes or proceedings, reject most forms of taxation as illegitimate, and place special significance in commercial law." United States v. Brown, 669 F.3d 10, 19 n.12 (1st Cir.) (citing Wikipedia,

http://en.wikipedia.org/wiki/Sovereign_citizen_movement (last visited Jan. 13, 2012)), cert. denied, 132 S. Ct. 2448 (2012). Similar arguments raised by defendants in other cases consistently have been rejected as erroneous as a matter of law. United States v. Delatorre, No. 03 CR 90, 2008 WL 312647, at *1 (N.D. Ill. Jan. 30, 2008); see Quigley v. Geithner, No. 1:09-CV-293-REB, 2010 WL 3613901, at *1 (D. Idaho Sept. 8, 2010) ("The [sovereign citizen] legal theory (in all of its various forms) has been struck down consistently by the courts."); see also United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992) (defendant's arguments, e.g., that he is a citizen of the "Republic of Idaho" and that the government in prosecuting him was acting on behalf of an agency controlled by a foreign entity, were "completely without merit, patently frivolous, and will be rejected without expending any more of this Court's resources on their discussion"); United States v. Sloan, 939 F.2d 499, 501 (7th Cir. 1991) ("Mr. Sloan's proposition that he is not subject to the jurisdiction of the laws of the United States is simply wrong."). Because they are contrary to established law, Harding's arguments will likewise be rejected.

### A.

Harding first argues that the "United States" is a municipal corporation consisting merely of the District of Columbia and the United States territories, citing the Organic Act of 1871. The Organic Act of 1871 "created a government by the name of the District of Columbia, constituted it 'a body corporate for municipal purposes' with all of the powers of a municipal corporation 'not inconsistent with the Constitution and laws of the United States and the provisions of this act,' and gave it jurisdiction over all the territory within the limits of the District." District of Columbia v. John R. Thompson Co., 346 U.S. 100, 104 (1953). The act provided "that 'the legislative power of the District shall extend to all rightful subjects of legislation within said District, consistent with the Constitution of the United States and the provisions of his act.'" Id. at 104-05.

Harding does not explain, and the court cannot discern, how the Organic Act of 1871 in any way affects the court's jurisdiction over this matter. The district courts of the United States have original jurisdiction, exclusive of state courts, over all offenses committed against the laws of the United States. 18 U.S.C. § 3231. "[T]he laws of the federal government apply to United States citizens throughout the nation, not just in the District of Columbia or federal enclaves." Delatorre, 2008 WL 312647, at *2. The court's Article III jurisdiction over this case stems from the indictment handed down by a properly assembled grand jury, charging Harding with a violation of 18 U.S.C. § 2250. The court "is obligated to follow the extensive line of United States Supreme Court precedent—and that of every federal court in this nation—asserting jurisdiction over criminal defendants and actions occurring not just in the District of Columbia and certain federal territories, but in every [state] in this country." Id. Harding's argument that is he outside the jurisdiction of the United States is unavailing.

**B.**

Harding's second jurisdictional argument revolves around the way his name is written in the indictment. Harding takes issue with the use of all capital letters, which he argues denotes a corporate entity, not a living person.[2] Harding does not appear to claim that he is not the person

---

[2] Addressing a similar argument, a Maryland district court cited to an internet website, which further explains the belief underlying the "capital letters" argument:

> John Joseph Smith, is a natural, flesh and blood, person, created by God. JOHN JOSEPH SMITH, is a U.S. corporate artificial person, U.S. citizen, created by the government. In basic English grammar, a name spelled in upper and lower case, such as John Joseph Smith, is indicative of a flesh and blood man, a natural person . . . . On the other hand, a name spelled in all caps, such as JOHN JOSEPH SMITH, is indicative of an artificial person.

United States v. Mitchell, 405 F. Supp. 2d 602, 603 n.4 (D. Md. 2005) (citing http://www.usa-the-republic.com/revenue/true_history/AffTruth.html (visited December 16, 2005)).

4

named in the indictment.[3] Rather, Harding's argument concerns the court's jurisdiction over his natural person.

At the March 29th status conference, Harding referred to the term "capitis deminutio maxima." The term "capitis deminutio" is defined in Black's Law Dictionary as "[a] diminution or abridgement of a person's legal status." Black's Law Dictionary 202-03 (7th ed. 1999). Black's Law Dictionary goes on to quote from Rudolph Sohm, The Institutes: A Textbook of the History and System of Roman Private Law 178-79 (James Crawford Ledlie trans., 3d ed. 1907)), as follows:

> Capitis deminutio is the destruction of the 'caput' or legal personality. Capitis deminutio, so to speak, wipes out the former individual and puts a new one in his place, and between the old and the new individual there is, legally speaking, nothing in common. A juristic personality may be thus destroyed in one of three ways: (1) by loss of the status liberates. This is the capitis deminutio maxima; (2) by loss of the status civitatis. This is the capitis deminutio media (magna); (3) by severance from the agnatic family. This entails capitis deminutio minima.

Black's Law Dictionary 203 (7th ed. 1999). Relying on this definition, Harding argues that the capitalization of his name in the indictment results in a comprehensive loss of his status as a natural person, reducing him to nothing more than a slave. Interestingly, however, nothing in this definition refers to the use of capital letters. The court is again at a loss as to how the term "capitis deminutio maxima," or the use of capital letters in the indictment, in any way affects the court's jurisdiction over this matter.

Courts have held that "the use of capital letters in the caption of an indictment is irrelevant to the issue of subject matter jurisdiction." United States v. Mitchell, 405 F. Supp. 2d 602, 604 (D. Md. 2005); see also United States v. Montgomery, No. 10-00187-01-CR-W-ODS, 2011 WL 976555, at *6 (W.D. Mo. Feb. 22, 2011) (rejecting argument that use of capital letters

---

[3] Indeed, the magistrate judge determined at an identity hearing on February 5, 2013 that there is probable cause to support the fact that Harding is in fact the person named in the indictment. See Dkt. # 8.

in indictment refers to a corporation not a living person), adopted by 2011 WL 941336 (W.D. Mo. Mar. 17, 2011); United States v. Singleton, No. 03 CR 175, 2004 WL 1102322, at *3 (N.D. Ill. May 7, 2004) ("[I]t makes no sense to rest a jurisdictional distinction upon the use of all upper case letters or a mixture of upper and lower case letters. The federal courts abandoned this level of formalism long ago."). The government and the court have properly addressed Harding both in court and on paper in a manner that clearly identifies him. Therefore, this jurisdictional argument also fails.

### C.

Harding argues the court lacks jurisdiction over this case because there is no corpus delicti, as no person has been injured by his conduct. Corpus delicti literally means "body of the crime." Black's Law Dictionary defines the term as: "1. The fact of a transgression; actus reus. 2. Loosely, the material substance on which a crime has been committed; the physical evidence of a crime, such as the corpse of a murdered person." Black's Law Dictionary 346 (7th ed. 1999). In practice, the corpus delicti rule "prohibits a prosecutor from proving the corpus delicti based solely on a defendant's extrajudicial statements," and requires prosecutors to "establish the corpus delicti with corroborating evidence to secure a conviction." Id.; see United States v. Hall, 396 F.2d 841, 844-45 (4th Cir. 1968) ("[A] criminal conviction cannot validly rest solely upon an uncorroborated confession.").

Harding does not explain precisely how he believes the doctrine of corpus delicti applies to this case. To the extent he is arguing that any extrajudicial statements he might have made must be corroborated by evidence to establish the trustworthiness of his admissions, he is correct. Hall, 396 F.2d at 844-45. But the issue is irrelevant here because Harding has entered a plea of guilty in this case and admitted his guilt under oath in open court. Additionally, the statement of facts to support his guilty plea, which has been signed and agreed to by Harding, provides

6

sufficient corroborative evidence to show that the crime charged has been committed. Dkt. # 29; see Opper v. United States, 348 U.S. 84, 93 (1954) (holding the government is required "to introduce substantial independent evidence which would tend to establish the trustworthiness of the [extrajudicial] statement.... It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth.").

To the extent Harding is arguing that his case should be dismissed because the government has not produced the physical body of a person injured by his conduct in failing to register under SORNA, no such evidence is required. Indeed:

> In popular language [corpus delicti] is used to describe the visible evidence of the crime, such as the dead body of a murdered person. Properly used, however, it is applicable to any crime and relates particularly to the act element of criminality; that is, that a certain prohibited act has been committed or result accomplished and that it was committed or accomplished by a criminal human agency.

Black's Law Dictionary 346 (7th ed. 1999) (quoting Justin Miller, "The Criminal Act," in Legal Essays in Tribute to Orrin Kip McMurray at 469, 478 (1935)). The government need not produce a body—or any other physical evidence for that matter— to establish a crime has been committed here. Cf. United States v. Wilson, 135 F.3d 291, 298 n.4 (4th Cir. 1998) (prosecution may establish corpus delicti for murder by circumstantial evidence); United States v. Russell, 971 F.2d 1098, 1110 (4th Cir. 1992) ("[R]ecovery of the victim's body is not necessary to prove murder beyond a reasonable doubt."). Rather, to obtain a conviction for violation of 18 U.S.C. § 2250, the government must prove beyond a reasonable doubt that defendant (1) was required to register under the Sex Offender Registration and Notification Act, 42 U.S.C. § 16913(a); (2) was previously convicted of a sex offense under federal law or traveled in interstate commerce; and (3) knowingly failed to register or update a registration as required under the Sex Offender Registration and Notification Act. United States v. Gould, 568 F.3d 459, 470 (4th Cir. 2009),

cert. denied, 130 S. Ct. 1686 (2010). Harding has admitted facts to support these elements of the offense charged and entered a plea of guilty. There is simply no corpus delicti issue here.

**D.**

In making his final jurisdictional argument, Harding points to the fringe on an American flag that stands in the corner of the courtroom and asserts this court is one of admiralty. Harding is not the first to raise such an argument; "[o]thers have attempted to persuade the judiciary that fringe on an American flag denotes a court of admiralty." United States v. Greenstreet, 912 F. Supp. 224, 229 (N.D. Tex. 1996). The concept behind this theory "is that if a courtroom is adorned with a flag which happens to be fringed around the edges, such décor indicates that the court is one of admiralty jurisdiction exclusively." Id. This argument has been uniformly rejected by courts, which have held that "[t]o think that a fringed flag adorning the courtroom somehow limits this Court's jurisdiction is frivolous." Id. (citing Vella v. McCammon, 671 F. Supp. 1128, 1129 (S.D. Tex. 1987)); see also United States v. Montgomery, No. 10-00187-01-CR-W-ODS, 2011 WL 976555, at *6 (W.D. Mo. Feb. 22, 2011) (rejecting argument that the American flag in the courtroom had been replaced with a military admiralty flag, noting similar arguments had been raised and dismissed in previous cases), adopted by 2011 WL 941336 (W.D. Mo. Mar. 17, 2011); Joyner v. Borough of Brooklyn, No. 98 CV 2579 (RJD), 1999 WL 294780, at *2 (E.D.N.Y. Mar. 18, 1999) ("The yellow fringe trim on the American flag has no effect on a court's jurisdiction or a defendant's constitutional or statutory rights."); United States v. Schiefen, 926 F. Supp. 877, 884 (D.S.D. 1995) ("Federal jurisdiction is determined by statute, not by whether the flag flow is plain or fringed."), aff'd, 81 F.3d 166 (8th Cir. 1996) (unpublished table decision). The court rejects this jurisdictional argument.

## III.

The second series of arguments raised by Harding concern the constitutionality of SORNA and 18 U.S.C. § 2250, the statute criminalizing a sex offender's failure to comply with SORNA's registration requirements. For the reasons set forth below, these arguments also lack merit.

### A.

Harding first contends that SORNA violates the Ex Post Facto clause of the United States Constitution because the convictions giving rise to his registration requirement occurred prior to SORNA's enactment. The Ex Post Facto clause "prohibits punishment of a defendant 'for an act which was not punishable at the time it was committed.'" United States v. Gould, 568 F.3d 459, 466 (4th Cir. 2009) (quoting Weaver v. Graham, 450 U.S. 24, 28 (1981)), cert. denied, 130 S. Ct. 1686 (2010); United States v. Sherman, 784 F. Supp. 2d 618, 622 (W.D. Va. 2011) (Ex Post Facto clause prohibits "retroactively aggravating the punishment of an offense after the time it was committed" (citing U.S. Const. art. I, § 10, cl. 1)).

Harding was convicted in 1997 with continuous sexual abuse of a child, two counts of unlawful sexual intercourse, and one count of unlawful sexual contact. See Dkt. # 29. SORNA was enacted in 2006 as part of the Adam Walsh Child Protection and Safety Act. Pursuant to the authority delegated by Congress, the Attorney General issued an interim rule on February 28, 2007 applying the registration requirements of SORNA to all convicted sex offenders, including those convicted prior to SORNA's enactment. United States v. Hatcher, 560 F.3d 222, 225 (4th Cir. 2009) (citing 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007)). As a sex offender, Harding is required to register pursuant to SORNA, and 18 U.S.C. § 2250 makes his failure to do so a federal crime.

9

Harding is charged in this case with traveling in interstate commerce and knowingly failing to update his sex offender registration between October 14, 2012 and November 30, 2012, in violation of 18 U.S.C. § 2250. The offense established by § 2250 is a post-enactment failure to comply with SORNA's registration requirements. This violation is separate and distinct from Harding's underlying state sex convictions and does not violate the Ex Post Facto clause. Gould, 568 F.3d at 466 (holding because defendant was punished for conduct after enactment of the SORNA provision criminalizing his conduct, his punishment does not violate the Ex Post Facto Clause); see also Sherman, 784 F. Supp. 2d at 622 (holding SORNA's registration requirements are nonpunitive in intent and in effect and the requirements themselves do not violate the Ex Post Facto clause); see generally United States v. Benevento, 633 F. Supp. 2d 1170, 1184 (D. Nev. 2009) ("The majority of cases have held that SORNA does not violate the *Ex Post Facto* clause of the Constitution."). Put simply, Harding "is not being prosecuted under 18 U.S.C. § 2250 for acts that did not violate SORNA when they occurred." United States v. Zuniga, No. 4:07CR3156, 2008 WL 2184118, at *13 (D. Neb. May 23, 2008), aff'd, 579 F.3d 845 (8th Cir. 2009), cert. denied, 130 S. Ct. 3384 (2010). Harding's Ex Post Facto argument fails.

**B.**

Harding also argues that a conviction in this case would amount to double jeopardy, as he would face punishment once again for his 1997 sex convictions. The Fifth Amendment to the United States Constitution "only prohibits multiple prosecutions for 'the same offence,' U.S. Const. amend. V, and does not apply to charges based on separate and distinct acts." United States v. Kozohorsky, 708 F.3d 1028, 1031 (8th Cir. 2013) (citing Blockburger v. United States, 284 U.S. 299, 301-04 (1932)). As previously discussed, Harding is charged in this case with failing to register as a sex offender as required by SORNA, in violation of 18 U.S.C. § 2250, an

offense that is separate and distinct from Harding's underlying state sex convictions. Harding's double jeopardy argument lacks merit.

## C.

Finally, Harding raises a Tenth Amendment argument, claiming the United States does not have police power over the state of Virginia and cannot encroach on state sovereignty. "Every federal decision found on this issue has rejected the defendant's Tenth Amendment argument." Zuniga, 2008 WL 2184118, at *19; see, e.g., United States v. Rogers, No. 4:09-227, 2010 WL 1664629, at *6 (D.S.C. Apr. 23, 2010) ("[T]he Court is not persuaded that SORNA results in an encroachment of federal power upon state sovereignty."), aff'd, 468 F. App'x 359 459 (4th Cir.), cert. denied, 133 S. Ct. 157 (2012); United States v. Robinson, No. 1:08cr76, 2008 WL 3895597, at *7 (E.D. Va. Aug. 19, 2008) (rejecting claim that SORNA violates the Tenth Amendment), aff'd, 355 F. App'x 713 (4th Cir. 2009); United States v. David, No. 1:08cr11, 2008 WL 2045827, at *8-9 (W.D.N.C. Apr. 18, 2008) (same), aff'd, 2008 WL 2045830 (W.D.N.C. May 12, 2008), aff'd, 333 F. App'x 726 (4th Cir. 2009); United States v. Gould, 526 F. Supp. 2d 538, 549 (D. Md. 2007) (same), aff'd, 568 F.3d 459 (4th Cir. 2009), cert. denied, 130 S. Ct. 1686 (2010). "SORNA does not require states to do anything more than what each state already does under its current sex offender registration laws. Instead, SORNA provides financial incentives to states to amend their existing sex offender registries to make them SORNA compliant." United States v. Brockbader, No. 1:12-cr-00156-BLW, 2012 WL 5588791, at *9 (D. Idaho Nov. 15, 2012); see also Robinson, 2008 WL 3895597; David, 2008 WL 2045827, at *9. Courts have held that "Congress did not violate the Tenth Amendment by giving states financial incentives to bring their individual sex offender registration systems in compliance with SORNA's registration requirements." Id. (citing United States v. Waybright, 561 F. Supp. 2d 1154, 1173-74 (D. Mont. 2008)); see Rogers, 2010 WL 1664629, at *6

11

(agreeing with the government's view that merely encouraging states to decide whether to endorse federal policy does not violate the principals of federalism); Gould, 526 F. Supp. 2d at 549 (holding SORNA's directives do not violate the Tenth Amendment because "[s]tate officials are not commandeered to implement the SORNA requirements. Rather, states are offered monetary incentives to amend their existing offender registration requirements.").

In raising this argument, Harding refers specifically to the United States Supreme Court's recent decision in Bond v. United States, 131 S. Ct. 2355 (2011). The Court held in Bond that a person indicted for violating a federal statute can have standing to challenge the validity of that statute on Tenth Amendment grounds. But while Bond suggests that Harding might have standing to raise this Tenth Amendment argument, it in no way dictates that such a challenge will be successful. In fact, other district courts within this circuit have held just the opposite. Rogers, 2010 WL 1664629, at *6; Robinson, 2008 WL 3895597, at *7; David, 2008 WL 2045827, at *8-9; Gould, 526 F. Supp. 2d at 549. Harding's reliance on Bond is misplaced.

At the March 29th status conference, Harding also made reference to the Fourth Circuit's decision in United States v. Cobb, 905 F.2d 784 (1990).[4] Cobb has no application here. The defendants in Cobb were former law enforcement officers convicted of, inter alia, willfully, and under color of state law, depriving an arrestee of his civil rights by subjecting him to excessive use of force, in violation of 18 U.S.C. § 242. There has been no issue of excessive force raised in this case under either § 242 or its civil analog, 42 U.S.C. § 1983. Cobb is simply inapposite.

For these reasons, Harding's Tenth Amendment claim fails.

---

[4] At the March 29th status conference, Harding made reference to the case "United States v. Cobb," without an accompanying case citation, along with the phrase "acting under color of state law." To the extent Harding intended to reference United States v. Cobb, 144 F.3d 319 (4th Cir. 1998), which involved a question of whether a carjacking statute was a valid exercise of Congress' Commerce Clause power, his argument is likewise unavailing, as the Fourth Circuit has held that § 2250 does not violate the Commerce Clause. United States v. Gould, 568 F.3d 459 (2009).

## IV.

It is clear that the arguments advanced by Harding in this case stem from his strongly held beliefs about the authority of the United States government and the jurisdiction of the federal courts. The court has no doubt about the sincerity with which Harding holds these beliefs. Nevertheless, the court's jurisdiction "does not depend on the unusual and varying beliefs of the Defendant." United States v. Singleton, No. 03 CR 175, 2004 WL 1102322, at *3 (N.D. Ill. May 7, 2004). The court is obligated to apply the law in this case, and Harding's arguments find no support in the law. As such, his motion to dismiss must be denied. Should Harding disagree with this ruling, he is free to exercise his right of appeal to the Fourth Circuit Court of Appeals.

An appropriate Order will be entered.

Entered: May _1_, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge